This is a video of the Thorley Nurserygoods Co. v. Thorley Industries LLC.  Wonderland Nurserygoods Co. v. Thorley Industries LLC  Please do. Mr. Talich? Yes, sir. Yes, Your Honor. May it please the court. The district court erred in two fundamental ways. First, the district court failed to apply its own construction. And second, without finding any exception that would allow it to do so, it read in limitations from the preferred embodiments into the claims. And if I may, I'd like to begin with the first motion mechanism, which deals with the first type of error. This is the one for Claim 14? That's for Claim 14, correct. The district court correctly construed the limitation calling for a first motion mechanism for driving. Let's assume for purposes of this question that, and I think you say this, that the district court in the claim construction adopted one claim construction and then in the summary judgment effectively narrowed the claim construction. So sometimes district courts can do that. And it effectively narrowed it to say that some kind of horizontal cabining is required for the guiding elements. Why is that wrong? Okay, so we're turning to the guiding elements limitation, or are we still on the first motion? I'm talking about Claim 14 because if the district court is right about this aspect of guiding elements, the motion mechanism doesn't matter, right? That's correct, Your Honor. The district court, I believe, read in limitations that are not required by Claim 14 itself. Claim 14, it pretty clearly defines what the guiding element is, that it merely needs to be something that the rollers are able to be movable upon. There's nothing in the claim language that would suggest to us that the guiding elements needs to have any sort of a three-dimensional structure or that it needs to guide in any particular direction, much less both vertical and horizontal. Notably, the court did find that the guiding elements of the monomer, or the structure we identified as the guiding elements, did guide, or at least there was a question of fact as to whether it guided the rollers along a horizontal plane, so in the vertical direction. You make that argument, you say a set of pathways in your brief. That's correct, Your Honor. Okay, and you say that that's consistent with the re-examination file history, then quoting, in particular, the examiner found that flat surfaces constitute guiding elements, and then you refer to what the examiner concluded about Serbo's Runway 14 and not the adjacent Shoulder 16 as guiding elements. So I looked at what the examiner said about Serbo and Serbo, and he said the first motion mechanism includes a first pair of spaced-apart guiding elements, Track 1, Runways 14, and includes two parallel rows of rollers, Wheels 44 disposed on opposite sides of the Base 30, which are movable along said guiding elements. What in the examiner's statement excluded the adjacent Shoulders 16? I think that's the point. The examiner doesn't identify the Shoulders at all or rely upon the Shoulders at all, and the same goes for Thorley in their petition to the Patent and Trademark Office. Nowhere were the Shoulders identified, or the fact that the Shoulders have the capability of guiding it in a horizontal direction. The only component that was relied upon were those runways and the ability of the runways to control in the vertical direction. So it simply wasn't addressed by the Patent Office at all. Let me back you up a little bit, because I have something that concerns me. And that is, in its red brief, and I checked this, at page 49 they say the text referring to a disk in the Wikipedia article was not added to that entry. That's why Wikipedia, by the way, is always problematic. It was not added to that entry until April 11, 2013, which was three months after the District Court's Markman ruling. They then go on to say at footnote 3, revision history of a Wikipedia article is available by clicking on View History. Doing so on the page at issue reveals that a user named Roley Williams first added language about a disk on April 11, 2013. Does your client have anything to do with or know anything about Roley Williams? Roley Williams is an individual that I'm not aware of that has any connection to my client. He has no connection to me. I did do a little background search, and it appears that he's some individual that lives in England. No apparent connection to the client. But I think the bigger picture- Have you made an inquiry of your client? I did not make an inquiry of the client, but I don't believe that. In the first instance, I don't think Wikipedia or what Wikipedia says is a proper thing to focus on. We didn't direct the District Court to look at the language of the Wikipedia. We merely cited to the demonstrative exhibit of the Hierapolis sawmill, which was an example of a disk-shaped crank. But most importantly for the crank limitations- Wait a minute. That wasn't in Wikipedia? I'm confused. The Hierapolis sawmill? Uh-huh. It was, but we were merely citing it for that demonstrative exhibit, not necessarily what- For the truth of what was in it. To be honest, I think that all of the Wikipedia sites, including the Hierapolis sawmill, are fairly irrelevant as it comes to construing the crank limitation. What is important is how a person of ordinary skill in the art would view the crank term. And I think both parties during the- They tend not to be sympathetic with counsel who tell me that they've cited irrelevant material. I don't think it's irrelevant. I don't think that the decision turns upon it. I think it's relevant in the fact that it shows how both an arm-shaped crank and a disk-shaped crank can perform- I thought you just told me you didn't think it was relevant. I misspoke, Your Honor. I just think it's not material to the court's determination. It's certainly demonstrative of how the term crank could be viewed and how it has been viewed for many centuries. Can I ask? On the assumption that a crank in general usage doesn't depend on its shape, how can it- I guess I'm focused very much on the language of the claim that talks about this crank having two ends. And then related to that, I think this is page 1707 or 1706 in the Joint Appendix, your infringement contentions where you have two pictures, one from Thorley's patent, one an actual photograph of the accused product, and on the disk what you do is draw little red dotted lines in the shape of an arm, namely a segment of the disk and say that that's the crank. So now you seem to be arguing that the whole disk is the crank. It can be viewed either way, that the entire disk is. Now the ends language in the claim was not construed by the district court. No, but I'm not sure that needs construction. So just focus on that for a minute. This crank has to have two ends. Hard for me to see that a disk does. Not hard for me to see that a arm-like segment built into the disk might, but that's not what you're arguing. I think that when you look at a disk and where you actually have the two connection points, the two connection points really define where the two ends are. If you just had a single disk that rotates about its center and it's not connected at another point, certainly there's really no ends to the structure, but in operation when you take a disk like this, connect it at two points, and put it in a mechanism, it certainly does have two ends. One end would be where the first point is connected. The other end would be where the second point is connected. In this case, we have both. As far as drawing the link onto the disk, that's certainly relevant to our theory of infringement under the doctrine of equivalence for sure. Can I ask this? On the assumption that the only part of the claim construction for claim three, the two issues, crank and connected fixedly, that I think is wrong is the right angle piece. Is there anything to remand? I believe there is, as long as you agree with us on the connected fixedly limitation. No, I'm sorry. I tried to be clear. I'll state it. Suppose I disagree with you about crank and conclude that a crank has to be an arm. I agree with you that it doesn't have to be at right angles. I disagree with you about the connected fixedly. Do I need to remand on claim three, and how so? Because there's no dispute that the accused product has a right angle. No, you would not need to remand because the issue, the claim construction of connected fixedly is determinative by itself. By itself? By itself. Even though the stipulation doesn't actually say that, but you now agree. The red brief says that, right? Correct. We've never contended the doctrine of equivalence argument for the connected fixedly, but we did for the crank limitation. So what controls the judgment of non-infringement at the district court is the construction of connected fixedly. I want to go back to your points of connection on your disk. Sure. What you've told us is that if you have two points of connection, you have two ends. That's right. Suppose that you have three points of connection. I suppose it would depend on where that third point of the point of connection is. Where does it all end? I'm sorry? How many points of connection can I have on a disk, and are those all ends? They could be if they were in a premise. Well, if it was in a straight line, then they couldn't, if all three points were in connections in a straight line, I think only two of them would be at the ends, and one of them would not be. If it's in a triangular shape, perhaps there could be the equivalent of three separate ends. You could have three points of connection. You could have three points of connection in a triangular fashion, and each one of them could be more accurately defined as being at each corner, three different corners as opposed to being at ends. I would like to address the connected fixedly limitations that did... Just so you know you're in your rebuttal time. Sure. I think the connected fixedly limitation is... Its ordinary meaning is really well conveyed by the dictionary definition of connected and fixedly. The district court, I think, made an error, just even in how the term connected is used in common usage. I think it's very common to say that your arms and legs are connected to your torso when they've never been disconnected. The district court, I believe also in the regent's case, which Thorley cites and relies upon, pretty clearly came to the same conclusion when it said a marble statue could be said to have a top half that's connected to a bottom half. With that, I'd like to reserve the remainder of my time for rebuttal. Mr. Brain? Yes, Your Honor. I say that to all counsel because I want to make sure I'm pronouncing your name correctly. I get it wrong. Please. Anyway. Mr. Brain is correct. Thank you, Your Honor. May it please the court. Wonderland fails to show any error by the district court in this case, let alone the four distinct and independent claim construction errors and two associated factual findings by the district court, all of which Wonderland would need to prevail on as they've now conceded. Let me disagree. No, I don't think that they've conceded that. If they prevailed on connected fixedly, they'd get a remand on claim three. I think that they do on claim 14 have to prevail at least on the guiding elements, which seems to me their sticking point. Well, I would disagree with that, Your Honor. I think when you look at the text of the stipulation with regard to claim three, they did not say we cannot prevail on a literal infringement theory anymore under claim three in light of these two separate constructions. They simply said in light of the combination of the two constructions. That's all the stipulation says. It lists both separately. It refers to the construction. In light of those constructions, it can't prevail on infringement. That doesn't say that it can't prevail on infringement if one but not both were overturned. I mean, we disagree with that, Your Honor, obviously. Okay. We'll move on then to the substance. Sure. So claim three has two distinct claim requirements, connected fixedly and crank. I guess more time was spent on crank, so I'll start there. The district court construed crank to require, among other things, that the crank take the form of an arm. We think that this is fully consistent with how the term is used in the patent and consistent with how the term is defined in a number of extrinsic sources. But not all extrinsic sources. It seems to me the arm question comes down, in my mind, quite simply to the claim language saying it has to have two ends. Otherwise, I don't know how you'd get there. Yeah, we agree with that, and we think that the intrinsic record shows an arm with two ends. Dictionary definitions at A549 and A411 also refer to an arm. We do think it's very clear that an arm has two ends, whereas a disc does not, for a number of reasons that Your Honor has discussed with my opposing counsel earlier. So the arm construction, we think, is sufficient to exclude the scope of the disc that's being accused, and that's why Wonderland stipulated at that time that the crank construction was dispositive of the infringement issue. Right, and I'll say again, they did not stipulate to that. They stipulated that the two constructions together deprived them of an infringement case. Right, Your Honor, I understand, and we disagree. So turn to the connected fixedly. If I had a hammer, would it not be possible to say that the face, the hitting face, and the claw are connected fixedly even though they're cast out of a single piece of, I don't know, iron or whatever it is? Well, we don't think that reflects the ordinary meaning of the term, and we certainly don't think that reflects how the term is used in the context that matters most, which is how it's used in the 609 patent. Without exception, the word connected or connected fixedly describes separate pieces that are somehow joined together. That was actually a question I wanted to probably actually ask your friend on the other side, but I'll ask you. In the several figures of the seat, the face, the bottom seat, are there any separately labeled, either by number or word, portions that are nevertheless cast out of, say, the same piece of plastic as other separately numbered portions? Well, the only example that I'm aware of is the piece that has the base and the legs. Those are elements 2 and 26, respectively. The patent describes those two portions of a single piece as being integrally formed, and when describing how the base relate to the legs, it says that the legs extend from the base. It does not say that the legs are connected to the base. So if I'm looking at Figure 1, which shows all three pieces, is it right that if everything except the rails were formed out of a precast, is this plastic that this is made of, or is this some other material? I'm not sure that the patent specifically limits it to that, but that's my understanding. Okay, let's assume it's plastic. If it was all formed out of a single piece, are there any separately numbered and named portions of that, assuming that everything but the rails was precast? Specifically with respect to the base portion that we're talking about, Your Honor? I'm now talking about the bottom seat. Oh, the bottom seat. But it's exactly the same question for all three pieces. Yeah, and again, Your Honor, I'm not aware of any separately labeled pieces within a single element that are described as connected to each other. I mean, we think there's a great deal of internal full consistency in the 609 patent that two pieces that are identified and shown separate from each other are described as connected, but in the only example of something that's not separate pieces and something that's integral, those pieces relate to each other by extending into each other. And that, we think, is telling of how connected is used in the patent. And Judge Fisher found that connected fixedly implies to any person, ordinary skill in the art or not, that there's a connection of separate pieces. And we think that the patent certainly seems to use that term in consistent with that way. She had seen some extrinsic sources as well. This isn't common, fairly ordinary term, not a technical term, and we think the district court reached the right conclusion, especially in light of the clear intrinsic record on connected fixedly. The general term or example for a claw hammer with the claw on one end and the striking face on the other is cast. Is that base cast as one piece? Yeah, that's how I would understand it as well. I mean, cast, molded, integrally formed, there are a number of ways to describe it. None of those are what anyone would refer to in the art, especially in light of this patent as connected. And that's the dispositive issue in our view with Claim 3. Can you talk about the guiding elements? I mean, tell me, my impression I have is that all of this, on that piece of it, comes down to whether that phrase requires something other than pure vertical blocking, a pure vertical blocking role, that it has some additional channeling of the thing being guided in some dimension other than don't let it go further south. We believe that there is a strong connotation of the set of tracks which direct movement construction that does require some side-to-side stability. So where do you get that out of the patent? Out of the patent? Well, we have one consistent type of example in the patent of what guiding elements are, and they are these guiding rods that the patent discloses that clearly provide, in addition to a vertical support so it doesn't fall through and touch the bottom seat, it does prevent the wheels from rolling off one side or another. And the district court did note that really the more important dispute, at least between the parties, seemed to be whether there was any horizontal parentheses side-to-side restraint on the movement. That's noted at A42. So I think Your Honor is right that that really seems to be more of the issue. But the district court didn't go quite that far and gave Wonderland the benefit of the doubt that there is at least some vertical support that maybe controls the movement. But then the summary judgment ruling effectively said no reasonable jury could find that this, that my earlier claim construction applied here basically because in the accused product there is nothing to prevent the wheels from going anywhere except down. That's the only thing these paths do. I think that's a fair reading. So just I guess go along with me for purposes of this question in saying that's a revised claim construction, which is fine. What's the support for that view of what guiding elements ultimately has to mean? Well, I think the intrinsic record is very helpful in that respect. Again, we have the example of the guiding rods, which the way that those rods engage with the wheels, the wheels sort of cup themselves over the rods a little bit so that there can't be any side-to-side movement by the wheels as it's rolling. Right, but you need to get beyond exemplary to an example to why that's sort of actually suggested. Well, I think the district court started in the right place to answer that, where observing that the patent does talk more generally about the idea of a guided path as being sort of the direction in which this base can move, but then further drills down and specifies that the guiding elements are the physical structure that allow that movement to proceed along the particular pathway that the patent envisions. And so the guiding elements, with the examples being the rods, are in the patent very clearly three-dimensional structures that are capable of providing that kind of guiding function. The district court didn't go so far as to limit the term to include only rods, but did construe them consistent with that, the broader genus of tracks, which could include a number of things noted in the record, such as a groove, a rail, or some other thing that extends from the surface upward or is embedded in the surface that's capable of providing the kind of guidance that's envisioned by the patent. So the horizontal side-to-side, we think that's clearly how the preferred embodiment works. Are there several embodiments here? Aren't there? There are a couple of alternative embodiments. Right, and maybe I'm not remembering right. I thought one of them didn't involve rails, but something more like indentations? Yes, so there is... I'm not envisioning that, so talk to me about that. So we discussed this more with respect to the crank limitation in the briefing, but what it is is instead of having a set of wheels and rails, the patent includes this threaded rod, sort of a helical slot in a rod, and as the rod turns, there are these teeth attached to the base that keep the base sort of connected to or engaged with the threaded slot in that rotating rod so that as the rod rotates, it moves along the teeth back and forth and up and down, commensurate with the movement of those slots. And does that do something more than prevent up and down? That is, prevent vertical? Does it guide in any direction other than the vertical? Yes, because the shape is helical as opposed to just circular. It doesn't just move the base up and down. It also slides it back and forth in a horizontal direction. So I think that is consistent with the notion that following Your Honor's logic that some aspect of guiding elements we think fairly contemplates a horizontal guidance, some sort of mechanical horizontal guidance. The district court, again, we don't think the district court quite went that far, but if you read the district court's opinion as clarifying the claim construction,  we think the court was correct to resolve the issue in Thorley's favor on that ground as well. There was some discussion as well about the first motion mechanism limitation. You know, this element raises a two-part issue, and again this independently justifies the summary judgment as to claim 14. Just to be clear, if you're right about guiding elements, the rest of claim 14 issues don't need to be considered. Is that right? That's correct, and that, Your Honor, I think you and I agree, is clearly stipulated by Wonderland as to claim 14 at least. The first motion mechanism- Let me direct you to something which I raised with your opposing counsel since you put it in on a footnote, and that was the modification of the Wikipedia article. Did you attempt to trace that individual out? Other than some online searching, we did confirm. I actually think the individual was in Australia and perhaps not England, but seems to be an active Wikipedian, I believe is the term, fond of editing articles. We don't make any representation that there's any affiliation between them. We just thought it was important to note that that evidence was not before the district court at the time. So a final point about the first motion mechanism, which again the court doesn't need to reach if it agrees with us on the guiding elements term. The district court construed for driving as being controlling or directing motion. We have an admission from Wonderland that the gear and linkage accused in the Mamoru product are, quote, for driving the base to move back and forth. Right, but there may be many things that are for driving. That doesn't make them all part of the motion mechanism. Well, that's true. I thought it was really quite clear from the other claims that the gear and link are part of the motor, not part of the motion mechanism, both of which are for driving, but it doesn't matter. The claim requires that it be this, is it the first or the second motion? The first motion mechanism. The first motion mechanism for driving. That doesn't mean that everything that's for driving, including the producer of the impulsive force, is also a first motion mechanism. That's right, Your Honor. There are outer limits to what can be considered for driving in the context of this patent. The patent does use the term for driving somewhat inconsistently, but does at least consistently refer to pieces that control or direct movement as being for driving. We think it's important to recognize that the first motion mechanism in Claim 3, which is not characterized as for driving, but has a separate motor recited for driving, is different from the first motion mechanism in Claim 12, which is recited as for driving. And the fact that there are dependent claims from there that specify and limit that first motion mechanism just to the wheels and the tracks, and that's Claim 13, we think is a pretty clear signal that the first motion mechanism for driving in Claim 12 includes at least those things and something more. You're over your time, counsel, so route out. Unless there are further questions, then, Your Honor, I will stop. Well, my only further question is, is a really active Wikipedian a Wikipediac? I think I can agree with that, Your Honor. Your Honor, I'd like to address, I think, a mistake that counsel thoroughly made in describing this helical shaft embodiment. There actually are two channels in that helical shaft, and one channel guides the horizontal movement and does engage with one of the little pins that sticks down to guide it horizontally. But the guiding element for the second motion mechanism, that shaft or that channel, does not engage with or control it in a horizontal direction, but it's merely a flat path that guides it vertically. So I think that that needs to be clarified. With respect to the guiding elements limitation, all the rest of the arguments that opposing counsel has proffered really demonstrate the district court's error here. When you ask for the support for the horizontal guidance and the three-dimensional structure, he went straight to the rod embodiment and said, well, look, the rod guides horizontally. Well, look, the rod is a three-dimensional structure. What he ignored was the broad language of the claim, which simply calls for a guiding element. So the patentee here chose the rod element. I'm sympathetic to the notion that there's not a lot of material to go on here, but there is a kind of intuition that a floor is not guiding, all by itself, just the floor. And that's all you have for these little pathways, which might have the equivalent of chalk marks that show you where they are, but the chalk's not doing anything. Well, I think the track in this instance is dictated by the wheels and where they actually move along that flat surface. And that's dictated simply by the physical structure of the wheels connected to it. Is it a post? Is that what it is? I think they call it a double-scissor mechanism. Right, but there's something else. That whole double-scissor mechanism is connected to something that prevents it from sliding off to the side, right? Well, in this instance, there's a base underneath the double-scissor mechanism that moves horizontally, and then on top of that you have the double-scissor mechanism, the platform on which the baby sits, and that double-scissor mechanism, by virtue of a crank and link, reciprocates up and down. I guess you could think of this, what if those areas with the chalk lines, as you put it, weren't there, if there was no flat surface? Well, what if the chalk lines weren't there, and there was a flat surface? We don't dispute that those raised lines are really just an indicator for the manufacturing process to show you where the wheels are supposed to be traversing. It is informative as to where the tracks are, because that's where the wheels are going to be traversing back and forth. So you use track as synonymous with route? I think it could be synonymous with route, but I think we're more using it in the sense of a track through the woods, a path through the woods. And I think the definition of track, which is in the record at the Joint Appendix at 423, clearly encompasses a flat surface, a path through the woods, would be an example. A trail through the woods is a track. So we're not using it in over your time, counsel. Thank you, Your Honor. If there's no further questions. Thank you.